### THE M. MATHIESON.

#### Petition of NEW YORK TRAP ROCK CORPORATION.

Circuit Court of Appeals, Second Circuit.
November 18, 1929.

No. 31.

Park, Mattison & Lynch, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for appellant Tice Towing Line.

Frederick W. Park, of New York City, for appellee New York Trap Rock Company.

William F. Purdy, of New York City, for appellees O'Boyle and Brooklyn & Buffalo Navigation Co.

Otto & Lyon, of New York City, for cargo damage claimant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). This appeal involves pure questions of fact, which have been resolved against the appellant by the trial judge.

On the morning of December 10, 1925, the tug Viatic took in tow, at Ninety-Fifth street, North River, the loaded stone scow M. Mathieson, owned by the New York Trap Rock Corporation and bound for a dock at Harrison, N. J. The Viatic proceeded down the river with the Mathieson, to Forty-Eighth street, Manhattan, where she placed the scow at the end of the pier outside two other light boats, and herself went to pick up another scow to place in her tow. She returned in about two hours and found the Mathieson leaking badly, as had not been the case before. The master of the Viatic, instead of putting on a suction pump at once, ordered the scow moved from the end of the pier around to the Forty-Eighth street side,

832

near the end, and went ashore to telephone the owner that she was leaking, who instructed him to pump her out. This took 20 minutes, and the scow meanwhile was taking water fast. When he returned, the engineer of the tug, who had affixed the syphon, pumped for about 5 minutes, but said that he could make no gain on the water that was coming in. The master of the tug then attempted to push the scow up into the slip, where he hoped to beach her in shallow water next the bulkhead, but this manœuvre was found by the trial court, upon controverted evidence, to be impossible without moving some of the vessels with which the slip was congested. The scow filled, turned over, and, in so doing, damaged the Lake Tupper and the Ellen Bushey, which lay along the north side of the Forty-Eighth street pier, as well as the cargo of the Continental Grain Company, with which the Ellen Bushey was laden.

The trial judge found that the scow could have turned over and sunk near the outer end of the slip without injury to the libelants, and held the Viatic negligent in waiting to telephone and in failing promptly to pump out the scow when her leaking condition became evident. He also held the Viatic negligent for attempting to shove a sinking barge up a congested slip, where danger of substantial damage could have been foreseen and actually occurred, instead of letting her sink near the end of the pier, where she would not affect other vessels.

While the Mathieson was a barge 25 years old, the testimony showed an inspection of her within 2 days of the accident by Buck, an employee of the New York Trap Rock Corporation, whose regular duty it was to go over the scows of the company to discover leaks. There was also proof of substantial expenditures upon the vessel for repairs, made within the year prior to the accident, and still larger expenditures in 1924. Such testimony as was offered was to the effect that the leaking never began until after the Mathieson started down from Ninety-Fifth street.

In such circumstances there would seem to be enough evidence to justify the conclusion of the trial judge that the corporation had a right to limit its liability. But in any event this cannot aid the appellant Tice Towing Line, owner of the Viatic, for the negligent conduct of the Viatic was the proximate cause of the injury. If the Viatic had not adopted a manifestly dangerous plan in dealing with her sinking barge, the Lake Tupper, the Ellen Bushey, and the cargo of the latter would have suffered no injury.

It is argued that the attempt of the Viatic to beach the scow in the slip near the bulkhead was the result of a fair exercise of judgment under difficult circumstances, but the experienced judge, who saw and heard the witnesses, found on controverted evidence "that the slip was congested and * * * the Mathieson could not have been beached without removing some of the boats to make way, which, under the conditions, could not be done by the Viatic." This finding was supported by ample evidence, so that it ought not to be disturbed. While the scow was unseaworthy, the negligence of the Viatic was the proximate cause of the collision.

The decree is affirmed.